# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 13, 2023

Lyle W. Cayce
Clerk

———————————

No. 22-40121

———————————

United States of America,

*Plaintiff—Appellee*,

*versus*

Fernando Lopez,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 2:20-CR-1442-1

_____

Before Smith, Clement, and Wilson, *Circuit Judges*.

Cory T. Wilson, *Circuit Judge*:

Fernando Lopez pled guilty to possession of a firearm and ammunition by a felon. He now challenges his sentence on several grounds, particularly the district court's imposition of a four-level enhancement for use or possession of a firearm in connection with another felony offense. The linchpin of this case is whether Lopez's repeated instances of being a felon in possession of a firearm were relevant conduct, justifying the enhancement. The district court thoroughly analyzed the factors for relevant conduct—similarity, regularity, and temporal proximity—and concluded the evidence

No. 22-40121

weighed in favor of the Government. The district court committed no error, clear or otherwise, in its analysis. Accordingly, we affirm.

## I.

In October 2019, Texas Department of Public Safety (DPS) troopers stopped Lopez while he was driving a white Mercedes. The officers observed a firearm on the driver's side floorboard of the car in plain view. The firearm was determined to be a loaded .40 caliber Sig Sauer pistol that had previously been reported stolen. Lopez was arrested but later released from state custody on bond, and no state charges have been filed in the interim. At the time, Lopez had several prior felony convictions, including a 2013 Texas conviction for robbery for which he was sentenced to five years of imprisonment.

In March 2021, Lopez was charged by federal authorities and arrested for the October 2019 offense. While making the arrest at Lopez's residence, officers searched his work vehicle and found a loaded .45 caliber Smith & Wesson pistol (which had previously been reported stolen in connection with an assault committed by a man named Kristian Garcia). Soon thereafter, a different victim reported that he had been assaulted by Lopez and Garcia in January 2021. Lopez and Garcia allegedly hit the victim in the head with their guns, described as a .45 caliber pistol (the same gun as found in Lopez's work truck) and a 9mm pistol, causing the victim multiple contusions, a possible broken jaw, and a broken arm.

Ultimately, Lopez pled guilty, without a plea agreement, to a one-count indictment charging him with possession of a firearm and ammunition by a felon, in violation of 18 U.S.C. § 922(g). The Presentence Investigation Report (PSR) fixed Lopez's base offense level at 20, pursuant to U.S.S.G. § 2K2.1(a)(4), because Lopez committed the 2019 offense after sustaining a felony conviction for a crime of violence (his 2013 Texas conviction for

2

robbery).    The PSR assessed a two-level enhancement pursuant to § 2K2.1(b)(4)(A) because the firearm was stolen, and it added a four-level enhancement pursuant to § 2K2.1(b)(6)(B) because Lopez had used or possessed a firearm in connection with another felony offense (viz., the possession of the .45 caliber pistol found in his work truck in March 2021, as well as the January 2021 aggravated assault and battery).    The PSR then awarded a three-level reduction for acceptance of responsibility.    These adjustments resulted in a total offense level of 23.    The PSR determined Lopez's criminal history score to be IV, which included 3 points assessed for the 2013 Texas robbery conviction.    With a total offense level of 23 and a criminal history score of IV, Lopez faced a guideline range of 70 to 87 months. Lopez objected to the PSR on several grounds—most notably asserting that the four-level § 2K2.1(b)(6)(B) enhancement for using a firearm in connection with another felony offense was erroneous.

At sentencing, the district court adopted the PSR's findings and calculations.    While the district court determined that a below-guidelines sentence was unwarranted based on the 18 U.S.C. § 3553(a) factors— particularly the nature of the offense and the seriousness of Lopez's criminal history—it found that a low-end sentence was appropriate.    The district court then walked through the analysis for determining whether the four-level § 2K2.1(b)(6)(B) enhancement for use or possession of a firearm in connection with another felony offense applied.    The district court determined the October 2019 and March 2021 firearm possessions were part of the same course of conduct via the relevant conduct standard, which required the district court to weigh three factors to determine if the two possession instances were sufficiently related: (1) the degree of similarity between the offenses, (2) the regularity of the offenses, and (3) the time interval between the offenses.    Ultimately, the district court determined that the time-interval factor weighed in favor of Lopez but a preponderance of the

evidence supported the other two factors, similarity and regularity, and weighed in the Government's favor. The district court concluded that the evidence established the two firearm possessions were relevant conduct and therefore part of the same course of conduct, thus supporting use of the enhancement. The court sentenced Lopez to 70 months' imprisonment followed by a three-year term of supervised release.

Lopez timely appealed his sentence, challenging the § 2K2.1(b)(6)(B) enhancement for using a firearm in connection with another felony offense because, he argues, the district court erred in its relevant conduct analysis. He also raises a foreclosed argument that his prior Texas robbery conviction is not a crime of violence for sentencing, challenges the district court's use of the preponderance of the evidence standard, and contends the use of his robbery conviction to determine his base offense level and criminal history score amounted to impermissible double counting.

## II.

This court reviews the district court's application of the Guidelines *de novo* and its factual findings for clear error. *See United States v. Brummett*, 355 F.3d 343, 344 (5th Cir. 2003) (per curiam). There is no clear error if the district court's findings are plausible in light of the record as a whole. *United States v. Serfass*, 684 F.3d 548, 550 (5th Cir. 2012). "A finding of fact is clearly erroneous only if a review of all the evidence leaves us with the definite and firm conviction that a mistake has been committed." *United States v. Rodriguez*, 630 F.3d 377, 380 (5th Cir. 2011) (per curiam) (quotation and citation omitted).

No. 22-40121

## III.

### A.

Lopez contends that the district court erred in applying the four-level § 2K2.1(b)(6)(B) enhancement for using a firearm in connection with another felony. According to Lopez, the enhancement should be confined to a felony committed with the *same* firearm underlying the charged offense. He concedes, though, that the enhancement can be based on relevant conduct. Still, he persists that the district court erred in finding that his 2021 possession of the .45 caliber firearm was "relevant conduct" bearing on his 2019 illegal firearms possession. This is because the two gun possessions were not part of the same course of conduct, as they were not part of a common scheme or plan. And they were too distant in time to be related, not sufficiently similar, and not part of a regular pattern of misconduct. The Government counters that the district court did not clearly err in finding that the 2021 possession constituted relevant conduct under the same-course-of-conduct test. We agree with the Government.

### 1.

Under § 2K2.1(b)(6)(B), the offense level for a firearms offense should be increased by four levels if the defendant "used or possessed any firearm or ammunition in connection with another felony offense[.]" A "felony offense" is "any federal, state, or local offense . . . punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained." § 2K2.1, comment. (n.14(C)). In determining whether the four-level enhancement applies, the district court must consider the relationship between the offense of conviction and the other felony offense "consistent with relevant conduct principles." § 2K2.1, comment. (n.14(E)).

Relevant conduct includes conduct that was part of "the same course of conduct" or a "common scheme or plan" as the offense of conviction. § 1B1.3(a)(2). The enhancement applies even if the firearm used for the increase is not the same firearm used in the offense. § 2K2.1, comment. (n.14(E)(ii)). Further, a "defendant need not have been convicted of, or even charged with, the other offenses for them to be considered relevant conduct for sentencing[.]" *United States v. Rhine*, 583 F.3d 878, 885 (5th Cir. 2009).

Offenses are part of a common scheme or plan if they are "substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi." § 1B1.3, comment. (n.5(B)(i)); *see Rhine*, 583 F.3d at 885. "Offenses that do not qualify as part of a common scheme or plan may nonetheless qualify as part of the same course of conduct if they are sufficiently connected or related to each other," *Brummett*, 355 F.3d at 345, to be deemed "part of a single episode, spree, or ongoing series of offenses," § 1B1.3, comment. (n.5(B)(ii)). The three factors for the analysis are (1) "the degree of similarity of the offenses," (2) "the regularity (repetitions) of the offenses," and (3) "the time interval between the offenses." § 1B1.3, comment. (n.5(B)(ii)); *see Rhine*, 583 F.3d at 886. A district court's findings regarding the relevant conduct factors are factual and thus reviewed for clear error. *Rhine*, 583 F.3d at 885; *Brummett*, 355 F.3d at 345.

**2.**

Here, the district court considered the relevant conduct factors during sentencing and determined that the degree of similarity and regularity of Lopez's conduct weighed in favor of the Government. However, the court found there was not sufficient temporal proximity and the timeline was "somewhat problematic for the Government." Because "all three factors need not weigh in favor of the Government," the court nonetheless found

that "overall . . . the facts before the [c]ourt have met the relevant conduct standard." The district court was not clearly erroneous.

Taking temporal proximity first, the Government (correctly) does not dispute that this factor cuts against it. This court typically uses one year "as the benchmark for determining temporal proximity[.]" *Rhine*, 583 F.3d at 886–87; *see also Brummett*, 355 F.3d at 345 (nine months); *United States v. Brown*, 783 F. App'x 330, 333 (5th Cir. 2019) (per curiam) (one year), *cert. denied*, 140 S. Ct. 1136 (2020); *United States v. Jessie*, 826 F. App'x 410, 411 (5th Cir. 2020) (per curiam) (ten months). Here, the record establishes that the firearm possession to which Lopez pled guilty occurred in October 2019, while the enhancement was based on a separate firearm possession in March 2021, approximately 17 months later.[1]

But temporal remoteness, alone, is not dispositive. Indeed, ingrafting a closeness-in-time requirement onto the other two factors, similarity and regularity, would essentially conflate the relevant conduct analysis into a one-factor test. Instead, similarity and regularity each get at something distinct from the timeline of the conduct at issue, as the Guidelines and our precedent make clear. *See* U.S.S.G. § 1B1.3, comment (n.5(B)(ii)) ("When one of the above factors is absent, a stronger presence of at least one of the other factors is required."); *Rhine*, 583 F.3d at 887 ("We conclude that temporal proximity is lacking, adding, however, that our conclusion does not necessarily preclude a finding of relevant conduct."). The other two factors can "overcome" a long lapse between the offense of conviction and

---

[1] There was another possession in January 2021: The same gun Lopez possessed in March 2021 was used in connection with the alleged January assault. The district court pegged its analysis to March, thus making the timeline 17 months. Measured from the January 2021 possession, the lapse between the offense of conviction and the subsequent possession would be 15 months, slightly closer to our one-year rule of thumb.

purported relevant conduct, so long as the factors are "authoritatively present[.]" *Rhine*, 583 F.3d at 887 (quoting *United States v. Miller*, 179 F.3d 961, 967 n.10 (5th Cir. 1999)).

As for similarity, Lopez contends that the mere commission of the offense of illegal possession of a firearm on two disconnected, temporally distant occasions is insufficient to satisfy the similarity factor. The Government responds that the offenses were similar because Lopez, a convicted felon, was twice found to be in possession of stolen, loaded pistols in his vehicle.

Generally, when evaluating similarity of relevant conduct, this court "inquire[s] whether there are distinctive similarities between the offense of conviction and the remote conduct that signal that they are part of a course of conduct rather than isolated, unrelated events that happen only to be similar in kind." *Id.* at 888. "[C]ourts must not conduct [the similarity] analysis at such a level of generality as to render it meaningless." *Id.* Much of our precedent in this area, including *Rhine*, stems from drug-related cases, in which the "mere fact that two separate offenses involve the same type of drug is generally not sufficient to support a finding of similarity." *Id.* at 888–89. But "drug cases are analogically distinct from felon-in-possession cases where the elements of the underlying offense are simply being a convicted felon in possession of a firearm." *Brown*, 783 F. App'x at 333 n.3; *see also Jessie*, 826 F. App'x at 411 (quoting *Brown*). Indeed, cases such as *Brown* and *Jessie* indicate that, in the context of a felon-in-possession offense, a felon's mere possession of a firearm satisfies the similarity factor.

Employing this reasoning, the district court readily found similarity between Lopez's offense of conviction and his other conduct:

> If we're looking at degree of similarity, I mean it's a felon in possession of a firearm. It's—the elements are looking at felon

No. 22-40121

> in possession of a firearm. Someone who had been—has a felony conviction and he has a firearm in his possession . . . that weighs in favor of the Government.

In adopting the PSR, the district court implicitly recognized other similarities: In both the October 2019 and March 2021 instances, the firearms were loaded, found in Lopez's vehicle, and had been reported stolen. We cannot say the district court clearly erred.

That brings us to regularity. Lopez asserts that the district court erred in finding regularity because there was no pattern to his actions. The regularity factor is satisfied when "there is evidence of a regular, i.e., repeated, pattern of similar unlawful conduct directly linking the purported relevant conduct and the offense of conviction." *Rhine*, 583 F.3d at 889–90. In *Brummett*, we noted that the defendant possessed firearms on "three separate occasions within a nine month period," and that his "pattern of behavior of possessing firearms was similar and regular." 355 F.3d at 345.

Lopez's timeline is admittedly more attenuated. However, the district court took that into consideration when analyzing regularity. And the court observed during sentencing that the .45 pistol found in Lopez's vehicle in March 2021 was also possessed by Lopez two months prior:

> [T]here was a gun, a different gun was used in an aggravated assault, aggravated robbery situation, January of 2021 . . . . When he was arrested, that same gun that was used in the January . . . incident, like two months before, was found in Mr. Lopez's truck. And it was loaded, as well.

The court underscored its reasoning later in the hearing:

> In terms of the regularity of the conduct . . . we're showing October of 2019, and then we have this gap. And then, even though it's a different gun, we're showing January of 2021 and then March of 2021. Different gun used than the 2019 incident, but [the] same gun used within that . . . two-month

9

time period or so.  So I think the [similarity and regularity] factors weigh in favor of the Government.

Ultimately, the district court's finding regarding regularity is "plausible in light of the record as a whole." *Serfass*, 684 F.3d at 550 (quotation omitted).

In sum, the district court adequately analyzed the three factors for relevant conduct and concluded that the similarity and regularity factors weighed in favor of the sentencing enhancement despite the lack of temporal proximity.  We therefore cannot say the district court erred in applying the four level § 2K2.1(b)(6)(B) enhancement for Lopez's use of a firearm in connection with another felony.

## B.

We next address Lopez's argument that Texas robbery is not a crime of violence for purposes of § 2K2.1 because it lacks use of force as an element.  As he did in the district court, Lopez concedes that the argument is foreclosed but raises it to preserve it for possible Supreme Court review.

This court has previously held that Texas robbery qualifies as a crime of violence under § 4B1.2 and is therefore a crime of violence for purposes of § 2K2.1(a)(4)(A).  *United States v. Adair*, 16 F.4th 469, 470–71 (5th Cir. 2021), *cert. denied*, 142 S. Ct. 1215 (2022) ("[T]he elements of Texas robbery substantially correspond to the basic elements of the generic offense of robbery." (internal quotation omitted)).  Thus, Lopez's challenge to the application of § 2K2.1(a)(4)(A) is indeed foreclosed.

## C.

Lopez similarly asserts that his sentencing enhancements, particularly the § 2K2.1(b)(6)(B) enhancement, should have been proven beyond a reasonable doubt.  According to him, the district court's use of the

preponderance of the evidence standard violated his Fifth Amendment and Sixth Amendment rights. Lopez's argument is not well-taken.

A judge may find all facts relevant to the determination of a guidelines range by a preponderance of the evidence. *United States v. Setser*, 568 F.3d 482, 498 (5th Cir. 2009); *United States v. Mares*, 402 F.3d 511, 519 (5th Cir. 2005). The preponderance standard satisfies constitutional concerns even when, as here, the court is deciding whether to enhance a sentence based upon the defendant's commission of another offense. *See United States v. Watts*, 519 U.S. 148, 156 (1997); *Nichols v. United States*, 511 U.S. 738, 748 (1994). Additionally, judicial factfinding by a preponderance of the evidence does not run afoul of the defendant's constitutional rights "where the defendant's sentence ultimately falls within the statutory maximum term." *United States v. Hebert*, 813 F.3d 551, 564 (5th Cir. 2015); *Mares*, 402 F.3d at 519. Here, Lopez was sentenced to 70 months—well below the 10-year statutory maximum. The district court did not err as to this issue.

## D.

Finally, Lopez contends that the use of his prior robbery conviction both to enhance his base offense level and to increase his criminal history score amounts to impermissible double counting. This argument likewise lacks merit.

The Sentencing Guidelines do not generally prohibit double counting. *See United States v. Calbat*, 266 F.3d 358, 364 (5th Cir. 2001). Indeed, the Guidelines permit the district court to consider a defendant's prior felony convictions in calculating both his offense level under § 2K2.1(a) and his criminal history category. *United States v. Hawkins*, 69 F.3d 11, 13–15 (5th Cir. 1995); *see* § 2K2.1(a)(4)(A); § 2K2.1, comment. (n.10) (instructing district courts to "use only those felony convictions that receive criminal

No. 22-40121

history points" under certain subsections). As with the foregoing issues, the district court did not err in calculating Lopez's sentence on this basis.

\* \* \*

Lopez's sentence imposed by the district court is

AFFIRMED.